EDWIN ALBERT MERRITT and Another, Respondents, *v.* HERBERT P. BISSELL, Appellant.

*Ratification of an unauthorized act of an agent relates back — an allegation that the act was done by the duly authorized agent is sufficient.*

An unauthorized act of one assuming to be the agent of another may be ratified by the one for whom such agent assumed to act, so as to bind the principal as effectually as if the agent had precedent authority; such ratification gives to the act the same effect as if it were previously duly authorized.

Where a person is clothed with some authority as agent, the ratification by his principal of his unauthorized act relates back and makes such act of the agent the act of the principal *ab initio*, and an allegation contained in a complaint in an action that such act was done by a duly authorized agent is, under such circumstances, sustained by proof of the ratification of such act by the principal.

APPEAL by the defendant, Herbert P. Bissell, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of St. Lawrence on the 18th day of May, 1894, upon the report of a referee.

*Martin Carey*, for the appellant.

*Charles O. Tappan*, for the respondents.

MAYHAM, P. J. :

This action was brought by the plaintiffs to recover a balance, claimed to be due them on a contract alleged to have been made by the plaintiffs with defendant by his agent, under which the plaintiffs claim to have delivered a quantity of red sandstone for the construction of the defendant's house in Buffalo, and for which the defendant refused to pay.

The answer of the defendant denied the making of the contract by him, and denied that the defendant's alleged agent had any

authority to make the same, or that he ever ratified any contract made by such alleged agent.

The case discloses that in the winter of 1891–1892 defendant employed Charles D. Swan to submit plans and specifications of a house which he contemplated building in the city of Buffalo, and to superintend the work of construction. Plans were submitted by the architect, and on examination of the same by the defendant and his wife, it was found that the specification of the masonry proposed rock-faced limestone, while the defendant's wife preferred red sandstone, used to some extent in that city in the construction of residences. Upon the assurance of the contractor that it was no more expensive than limestone, it was decided to substitute red sandstone in the specification.

Afterwards, upon the specification of that kind of stone, bids were called for upon the masonry, and one Schumacher was the successful bidder, and the evidence shows that the contractor, architect and defendant all understood that the masonry was to be constructed of red sandstone.

The contract with Schumacher provided that "the contractor shall and will well and sufficiently perform and finish, under the direction and to the satisfaction of Charles D. Swan, architect (acting as agent of said owner), all the works included in the masonry work of a proposed new dwelling house, * * * according to the true intent and meaning of said drawings and specifications, and of these presents, including all labor and materials incident thereto, and shall provide all scaffolding, implements and cartage necessary for the due performance of the said work."

The contract was minute in all details relating to the time and manner of performance by the contractor, and provided, in case of failure or neglect of the contractor to perform the contract according to its terms, on the certificate of the architect of such failure of the contractor to perform such work and to furnish materials, that the owner should be at liberty to terminate such employment, and that the contractor should not be entitled to receive any further payment under the contract, until the owner should have completed the construction according to the specifications of the contract, when he was to deduct the expense of such completion, and the excess, if any, over such expense, was to be paid to the contractor. The

contract price for such work and materials was fixed at $2,600, payable at different times as specified in the contract as the work progressed. The contract between the defendant and Schumacher was dated on the 28th day of June, 1892. The evidence tends to show that Swan, assuming to represent the defendant, on the 21st of May, 1892, contracted with the plaintiffs' company to furnish the red sandstone to defendant at Buffalo on the cars, cut and fitted as required by the specifications, at the price of $1,385.

Plaintiffs' counsel put in evidence a letter written by plaintiffs to Charles D. Swan, dated May 21, 1892; this letter was admitted in evidence under the objection of the defendant. It contained the terms on which the plaintiffs proposed to furnish the red sandstone at defendant's place in Buffalo.

There was no proof that the defendant had ever seen the letter.

There were several other letters, some of which passed between the stone company, now represented by the plaintiffs, and this defendant, and some of which passed between the plaintiffs and Swan, whom the plaintiffs treated and seemed to recognize as the agent of the defendant.

Immediately on making the contract with Swan the plaintiffs commenced getting out and cutting the stones and loading them on the cars as fast as they were dressed, and on the twenty-ninth of June shipped two carloads of stone, cut and prepared to lay in the defendant's building, consigned to the defendant at the city of Buffalo, and on the first day of July notified Swan, the defendant's architect, of such shipment. On the 27th of July, 1892, the plaintiffs addressed a letter to the defendant, informing him of the shipment of June twenty-ninth, and also duplicate receipt for cars and itemized bill of the stone shipped on the two cars, and in the letter they called attention to the contract for stone, made with Swan as agent for defendant, and the amount of the plaintiffs' bill for stone under that contract.

On the twenty-ninth of June the defendant, by John O'Sullivan, agent, acknowledged the receipt of the two carloads of stone from the plaintiffs' company. On the 29th of August, 1892, the defendant replied to the letter of the plaintiffs of July twenty-seventh, stating, among other things, that he understood from his architect that he had ordered the stone from the Potsdam Red Sandstone

Company in the defendant's name, but that the bills would be paid by the contractor, and therein referred the plaintiffs to the architect and contractor.

It will be observed that in the letter the defendant did not repudiate the contract made by Swan with the plaintiffs or dispute the power of Swan to make the contract as his agent.

To the letter of the defendant the plaintiffs replied on the fifth of September, asking that the defendant's check for the stone should be payable to the order of the plaintiffs, and not to the defendant's contractor. On the 15th of September, 1892, the defendant paid the cartmen for transferring the stone from the railroad to the site of the building, on the certificate of Swan, the architect, and charged the same to the contractor. The referee finds that on the 19th of October, 1892, the defendant paid plaintiffs on the price of these stones, $500, and that with the amount of freight and transportation is all that he has paid the plaintiffs on these stones. There is much more evidence offered by the respective parties to the controversy, tending on the one side to establish the validity of the contract by Swan with the plaintiffs as the agent of defendant, and also on the other side tending to prove a want of authority on the part of Swan to bind the defendant by the contract made with the plaintiffs.

The referee finds that there was no original authority in Swan as the agent of the defendant· to make the contract of May 21, 1892, with the plaintiffs; but that by the payment of $500 and the freight and cartage and the use of the stone shipped by the plaintiffs under that contract, the defendant, with knowledge of the existence of the contract and its terms, ratified and adopted the same and became liable to pay the plaintiffs according to its terms.

We think the evidence is sufficient to uphold such finding and conclusion. Under the conflicting evidence and theories of the respective parties, it was a question of fact for the referee to determine whether or not the defendant, with full knowledge, ratified and adopted that contract.

Upon that question of fact the referee's finding was supported by some competent evidence, and there is no sufficient preponderance of evidence against such finding as to justify the court on appeal to interfere with such conclusion.

It is a familiar rule of universal application that an unauthorized

act of one assuming to be the agent of another may be ratified by the one for whom such agent assumes to act, so as to bind the principal as effectually as if such agent had precedent authority.

This rule is stated in 1 American and English Encyclopædia of Law on page 429, as follows : " An unauthorized act by one assuming to be an agent for another may be ratified by the principal, and such ratification gives to the act the same effect as if it were previously duly authorized."

And the learned author and compiler cites under this principle a large number of authorities in this and other States, as well as in the Federal and English courts.

There seems to be great propriety in the application of this rule to the case at bar. The defendant had invested Swan, the architect, with large powers to act for him in the construction of this house. He and the defendant and defendant's wife had agreed and settled upon red sandstone as the material to be used in the construction, although the specification with the builder was for limestone. This change of plan was made between defendant and the architect before any stone had been contracted for by any one.

Clothed as he was with some authority as agent, the ratification by the principal related back to and made his act in making this contract the act of the principal *ab initio,* so that the allegation that the act was done by a duly authorized agent is sustained by the ratification of the act by the principal. (*Hoyt* v. *Thompson,* 19 N. Y. 207–219.)

We have examined the exceptions taken by the defendant to the ruling of the referee in regard to the receipt and rejection of evidence upon the trial, and to his findings and refusals to find, and see no error for which this judgment should be reversed.

PUTNAM and HERRICK, JJ., concurred.

Judgment affirmed, with costs.